**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MUNDO VERDE PUBLIC CHARTER SCHOOL, <br>           Plaintiff, <br><br>        v. <br><br> DISTRICT OF COLUMBIA, <br>           Defendant. | Civil Action No. 22-2290 (CKK) |

**MEMORANDUM OPINION**
(September 28, 2023)

Pending before this Court are Cross-Motions for Summary Judgment by Mundo Verde Public Charter School and the District of Columbia.[1] More specifically, Plaintiff Mundo Verde Public Charter School ("Plaintiff" or "Mundo Verde") moves this Court to reverse the May 5,

---

[1] In connection with this Opinion, the Court considered the Mundo Verde's [12] Motion for Summary Judgment and Memorandum of Points and Authorities in support thereof ("Pl.'s Mot."); the District's [consolidated] [14] Opposition to Mundo Verde's Motion ("Def.'s Opp'n") and [15] Cross Motion for Summary Judgment ("Def.'s Cross Motion"); Mundo Verde's [17] [Consolidated] Opposition to the Cross Motion and Reply in support of Motion for Summary Judgment ("Pl.'s Reply"); the District's [18] Reply to Plaintiff's Opposition to its Cross Motion ("Def.'s Reply"); the [11] Administrative Record ("AR"); and the entire record in this case. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

2022 Hearing Officer's Determination ("HOD"), which was issued in the form of an Order underlying administrative action, while the District moves this Court to affirm the HOD. The Hearing Officer determined that the District of Columbia ("Defendant" or "the District") is not required to provide to J.P. – a minor and student receiving special education services at Mundo Verde – bus transportation services between his Virginia school and J.P.'s father's Maryland home, when J.P. stays with his father. Upon consideration of the motions, oppositions, and the record in this case, the Court DENIES Mundo Verde's [12] Motion for Summary Judgment and GRANTS the District's [15] Cross Motion for Summary Judgment. A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Factual Background

The following facts are undisputed by the parties. Mundo Verde is a public charter school located in the District of Columbia, where J.P. was enrolled during second grade, Administrative Record ("AR"), ECF No. 11-1, at 61, and it is J.P.'s local education agency ("LEA"). AR at 4-5.[2] J.P. is a student who is eligible for special education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* AR at 5, 61, 68. J.P.'s September 17, 2021 Individualized Education Program ("IEP") identified a non-public special education day school as his least restrictive environment. AR at 5, 61, 68. Subsequent to an October 25, 2021 HOD that concluded that J.P. required placement in a more restrictive environment than Mundo Verde could provide, AR, at 94, 153-168, the Office of the State Superintendent of Education ("OSSE")

---

[2] The Court references the page numbers assigned by the Electronic Case Filing ("ECF") system.

2

issued a location assignment to CARD Academy on December 1, 2021. AR at 6, 63, 117.

While J.P. was enrolled at Mundo Verde, which served as his LEA, he began attending CARD Academy in Alexandria, Virginia, on January 10, 2022. AR at 6. The placement at CARD Academy is funded by OSSE, which is responsible for paying the costs of education, including special education and related services, of students with disabilities who have been placed in nonpublic special education schools under certain conditions. AR at 6 (citing D.C. Code § 38-2561.03(c)). Because J.P. must attend a specialized program outside of Mundo Verde, transportation was added to his IEP as a related service. AR at 5, 61, 92. More specifically, J.P.'s IEP notes:

> 1) Behavioral intervention needs: . . . is a student with Autism Spectrum Disorder, and he requires a 1:1 dedicated bus aide (he receives one in school as well). He has constant non-compliance and elopes. He often spaces out and play acts internal action scenes.
> 2) Specialized equipment: specialized seatbelt. . .

AR at 5, 92.

J.P.'s parents share joint physical and legal custody pursuant to a November 19, 2021 custody order issued by the Superior Court of the District of Columbia, and they alternate custody every week. AR at 5, 62, 97. J.P.'s father resides in Prince George's County, Maryland, while his mother resides in the District of Columbia, and for school enrollment purposes, J.P. is a *bona fide* resident of the District of Columbia and lawfully enrolled in a District of Columbia LEA. AR, at 5, 62.

**B. Transportation Services**

OSSE is the state education agency ("SEA") in the District of Columbia, and as such, it is responsible for providing the related service of transportation to students with disabilities in the

District.[3]  OSSE has promulgated a Special Education Transportation Policy ("Transportation Policy") to establish a uniform system of standards and procedures for special education transportation services in the District.  AR at 62, 105.  OSSE's Transportation Policy, last updated on November 6, 2013, states in relevant part:

> b) . . . OSSE DOT shall provide special education transportation services to students with disabilities when transportation is appropriately identified and documented on an IEP as a related service under the IDEA.
>
> \*          \*          \*
>
> d) LEAs are responsible for reimbursement costs related to the provision of special education transportation services that arise out of court orders or HODs that determine that the LEA has failed in its obligation to provide FAPE.  If a court order or HOD finds that the student has been denied FAPE by the LEA which is attributable to a failure by OSSE DOT to provide special education transportation services in accordance with the student's IEP, OSSE DOT will be responsible for reimbursing the transportation costs in accordance with the order or HOD.
>
> e) Pick-Up and Drop-Off Locations and Times.  OSSE DOT will provide one round trip from each student's residence in the District of Columbia to the student's attending school per school day.  The student's address provided to OSSE DOT shall match the address used to establish District of Columbia residency.  OSSE DOT will not change a student's route to accommodate the student or parent for personal reasons (e.g. accommodations of non-FAPE related childcare, one-time or sporadic changes in pick-up or drop-off locations for the student's or parent's convenience).  Parents are responsible for making their own arrangements for days that the student needs pickup and drop-off services from locations other than the address on record with OSSE DOT.

AR at 105-112 (as set forth in Plaintiff's Statement of Undisputed Facts, ECF No. 12-1).

Pursuant to District law, for the purposes of the Uniform Per Student Funding Formula,

---

[3] The parties acknowledge that J.P. was a *bona fide* resident of the District of Columbia for school enrollment purposes, as his mother resided in the District. *See* AR at 5. Under the IDEA and its implementing regulations, "related services" include "transportation and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education . . ." 20 U.S.C. § 1401(26); *see also* 34 C.F.R. § 300.34(a). Transportation is defined to include "travel to and from school and between schools, . . ." 34 C.F.R. § 300.34(c)(16).

transportation of students with disabilities and payment of tuition for private placements are considered state level costs, AR at 63; D.C. Code § 38-2901(12), § 38-2907, and as such, OSSE funds these special education and related (transportation) services for a student with disabilities when the student is placed in a nonpublic special education school. AR at 63. J.P.'s placement at CARD Academy was funded by OSSE. AR at 63, 94. Mundo Verde (in its role as J.P.'s LEA) reached out to OSSE's Department of Transportation ("DOT") in early December 2021, to determine whether OSSE DOT would provide transportation, pick-up and drop-off, from the father's home in Prince George's County, Maryland. AR at 63, 120-125. OSSE informed Mundo Verde that it would only provide transportation to and from the mother's District of Columbia address and would not provide transportation to and from the father's address in Maryland. AR at 63, 120-125.

During the 2021-2022 school year, while J.P. was attending CARD Academy, Mundo Verde provided an Uber for J.P.'s father to take J.P. to school in the morning and pick him up in the afternoon during the weeks J.P. was in his custody. AR at 64. Mundo Verde filed a due process complaint against OSSE on January 24, 2022, alleging that OSSE denied J.P. a free appropriate public education ("FAPE") by failing to provide transportation between the father's Maryland residence and the school in Alexandria, Virginia. AR at 16-23. The parties agreed to brief summary judgment motions, and the Hearing Officer issued his determination in the form of an Order on Cross-Motions for Summary Judgment dated May 5, 2022. AR at 4-13, *see* AR 144-188 (underlying motions). The Hearing Officer found in favor of OSSE, concluding that OSSE was not obligated to accommodate the parents' domestic arrangement and that OSSE's facially neutral policy, which limited service only to students physically residing in the District, did not preclude J.P. from receiving a FAPE from OSSE. AR at 13. On August 3, 2022, Mundo Verde

filed its [1] Complaint in the instant case, and the parties proposed a briefing schedule for summary judgment motions which are now ripe for resolution by this Court.

## II. STANDARD OF REVIEW

Under the IDEA, a party aggrieved by a hearing officer's determination may bring a civil action in any state court of competent jurisdiction or in a district court of the United States. 20 U.S.C. § 1451(i)(2)(A). A court reviewing an administrative IDEA determination "shall grant such relief as the court determines is appropriate," based upon "a preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 205–206 (1982). Courts, however, must refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206. Accordingly, "[c]ourts sitting on an IDEA appeal do not have unfettered review but must . . . give due weight to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 108-109 (D.D.C. 2010) (citing *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (internal quotation marks omitted)). Furthermore, "a court upsetting [a hearing] officer's decision must . . . explain its basis for doing so." *Kerkam v. McKenzie*, 862 F.2d at 884, 886 (D.C. Cir. 1988).

"Although motions for review of an HOD are called motions for summary judgment, the Court does not follow 'a true summary judgment procedure.'" *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)); *cf.* Fed. R. Civ. P. 56. Rather, in a civil action brought to challenge a Hearing Officer's determination pursuant to the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any

additional evidence the Court may receive." *D.R. v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). Where, as here, neither party has requested that the Court hear additional evidence, the motion for summary judgment "is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.G. v. District of Columbia,* 246 F. Supp. 3d 1, 8 (D.D.C. 2017) (citing *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)); *Thomas v. District of Columbia,* 407 F. Supp. 2d 102, 109 (D.D.C. 2005) (without new evidence, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record").

The party challenging the underlying administrative determination bears "the burden of proving that the 'hearing officer was wrong.'" *Pavelko v. Dist. of Columbia*, 288 F. Supp. 3d 301, 306 (D.D.C. 2018) (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 401 F. 3d 516, 521 (D.C. Cir. 2005)); *see also Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) (same); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (finding that the burden of proof in an administrative hearing concerning an IEP is "upon the party seeking relief").

### III. ANALYSIS

The dispute in this case centers around the Hearing Officer's determination that OSSE is not required to provide transportation for J.P. when he is in the custody of his father who lives in Maryland. Plaintiff argues that "[n]ot only does OSSE have a general responsibility for providing transportation in accordance with the IEP pursuant to its own policy and DC law, but OSSE also has explicit responsibility for ensuring that [the student] is provided special education and related service in accordance with his IEP by virtue of the fact that he is placed in a private, special education day school." Pl's Mot., ECF No. 12, at 8 (referencing 34 C.F.R. § 300.146).

In this case, the Hearing Officer's determination relied in part upon *North Allegheny School Dist. v. Gregory P.*, 687 A.2d 37 (Pa. Commw. Ct. 1996), which he found to be "virtually identical" to this case.  AR at 13.  In *Gregory P.*, the court found that the school district did not violate the IDEA when it denied the child's parents' request that the district deviate from its transportation policy to accommodate the parental custody arrangement.  *Gregory P.*, 687 A.2d at 40.  In that case as well as in the instant case: (1) the student's IEP identified transportation as a required related service; (2) the student's custody was established by a court order that divided physical custody evenly between the mother and the father, who lived in different school districts; (3) the student's mother lived within the school district while his father lived outside of it; and (4) the father requested that transportation be provided to his out-of-district address, which was denied by the school district.  *Id.* at 39.  The court in *Gregory P.* found that "the additional transportation requested services [were] not to address any [the student's] special educational needs, but only to accommodate the particular domestic arrangements which [the student's] parents have made . . . " and furthermore, that "[m]itigating such hardships . . . is not the purpose of the IDEA . . ."  *Id.* at 40.  Moreover, the court explained that the IDEA "requires that the district provide each exceptional student with an appropriate education, transportation between his residence and his school, and additional transportation or other related services where needed to address his educational needs" but that "does not extend to accommodating all the lifestyle preferences and personal needs of parents whose children happen to have special educational needs."  *Id.*

Plaintiff's attempt to distinguish the analysis in *Gregory P* is flawed.  Plaintiff contends that because the student in *Gregory P.* "did not require an out of district placement to meet his needs," the request to deviate from the transportation policy in that case was based strictly on the parents' domestic arrangement rather than the student's disability.  Pl's Reply, ECF No. 16, at 2

(emphasis added by this Court).  The Court notes that this distinction [in the form of an intra-district transfer] was discussed in *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968 (8th Cir. 1999), which is another case cited by the Hearing Officer.  In *Timothy H.*, the parents elected to enroll their child in a school "located within the school district, but [that was] not [the student's] regularly assigned neighborhood school," even where the neighborhood school was able to provide FAPE.  *Id.* at 970.  The school district granted the student's intra-district transfer request but notified the student's parents that its applicable policy stated in relevant part that "[p]arents shall be responsible for the transportation of students not attending their resident area school . . . " *Id.*

After an Administrative Law Judge upheld the school district's refusal to provide transportation, the parents appealed to the district court, which held that the policy of refusing to provide the student with specialized transportation violated the Rehabilitation Act.  *Id.* at 971. That ruling was reversed by the appellate court, which found that the student was not discriminated against based on her disability, as the school district "require[d] that all students, regardless of their personal transportation situation, provide their own transportation to their school of choice as a condition of participation in the intra-district transfer program.  *Id.* at 972.[4]  Accordingly, the appellate court found that the establishment of a special bus route for the student at issue would be "an undue financial burden and a fundamental alteration" in the program.  *Id.* at 972-973.

Plaintiff argues that, in the present case, the "only reason the student [J.P.] requires transportation is because he has been placed at a nonpublic school outside of the District of

---

[4] The appellate court in *Timothy H.* did characterize the student's desire to "go to another school" as a matter of "parental preference" when the student's "neighborhood school ha[d] a special education program that me[t] her needs."  178 F.3d at 973.

Columbia" and therefore, the need to deviate from the transportation policy is "not exclusively the result of the parents' domestic arrangement." *Id.*; *but see* AR at 12 (rejecting Plaintiff's argument that J.P.'s out-of-state school placement, not his father's out-of-state residence is the basis for its request). Defendant explains that "based on their "particular domestic arrangement," J.P.'s father here has made a choice to live in Maryland, and, just as in *Gregory P.*, that is a "lifestyle preference," that OSSE is not obligated to separately accommodate under its policy or under the IDEA. Def.'s Reply, ECF No. 18, at 2 (quoting *Gregory P.*, 687 A.2d at 40). This Court notes that, in both this case and *Gregory P.*, the request to deviate from the applicable transportation policy was based ultimately on the parents' domestic arrangement, and accordingly, the Hearing Officer's reliance on *Gregory P.* was appropriate, as that case is factually on point.

The Hearing Officer relied also on *Fick v. Sioux Falls Sch. Dist.*, 337 F.3d 968, 970 (8th Cir. 2003). AR at 7. In *Fick*, the student suffered from epileptic seizures and was provided with a nurse-accompanied taxi for her daily transportation between home and school. *Fick*, 337 F. 3d at 969. The parent requested that the student be dropped off at a site outside her neighborhood school boundary but within the school district. *Id.* In *Fick*, as in the instant case, the school district's policy allowed for one pick-up address before school and one drop-off address after school, as long as both addresses were within prescribed geographical boundaries. *Id.* The school district denied the parent's request for after school drop-off at an out-of-boundary address, and upon concluding that the request was made for "personal reasons unrelated to [the student's] educational needs," the Hearing Officer found in favor of the school district. *Id.* at 969-970. The district court ruled that the school district had not violated the IDEA by refusing to transport the student to a drop-off address outside her designated cluster boundaries, and the Court of Appeals for the Eighth Circuit affirmed that ruling. *Id.* at 970. Drawing on reasoning from *Timothy H.* and

10

*Gregory P.,* the appellate court held that "a school district may apply a facially neutral policy to a disabled child without violating the law when the request for a deviation from the policy is not based on the child's educational needs, but on the parents' convenience or preference." *Id.* The District asserts, and this Court agrees, that the "conclusion [from *Fick*] applies with equal force here." Def.'s Cross-Mot, ECF No. 15, at 13.

Plaintiff relies, however, on *Dist. of Columbia v. Ramirez*, 377 F. Supp 2d 63 (D.D.C. 2005), but Defendant asserts that *Ramirez* is factually inapposite as it focused on "the issue of whether District of Columbia Public Schools (DCPS) was required to provide a transportation aide to convey a wheel-chair-bound student from his parent's apartment door to the bus." Def.'s Opp'n, ECF No. 14, at 13 (citing *Ramirez*, 377 F. Supp. 2d at 66). Plaintiff asserts that the *Ramirez* court concluded that a facially neutral policy may be "exempt from review when deviations are requested for convenience alone," but not if the deviation from a facially neutral policy is required to meet the student's unique educational needs, in which case, exceptions must be made to provide FAPE. Pl.'s Mot., ECF No. 12, at 10 (quoting Ramirez, 377 F. Supp. 2d at 70). Plaintiff contends that, in this case, J.P.'s IEP only provided for transportation <u>after</u> the IEP team's "decision that the student required placement in a specialized program in order to receive FAPE." Pl.'s Mot., ECF No. 12, at 11 (emphasis added by this Court).[5] Plaintiff proffers therefore that J.P.'s "educational placement needs are the basis for the enhanced service request," as opposed to "parent preference or convenience," and accordingly, Plaintiff concludes that this case is comparable to *Ramirez.* Pl.'s Mot., ECF No. 12, at 11.

---

[5] When J.P. was enrolled at Mundo Verde, his parents were "responsible for transporting him to and from school[.]" Pl.'s Mot., ECF No. 12, at 11.

This Court notes that the *Ramirez* court distinguished the *Fick* and *Timothy H.* cases on grounds that "[t]hose cases involved children who were regularly attending school, and whose IEPs were being implemented effectively." *Ramirez*, 377 F. Supp. 2d at 70. Moreover, the District notes that the student in the *Ramirez* case "had been unable to attend school *for two years* due to the transportation dispute with DCPS" and furthermore, the policy in effect was that "the pick-up and drop-off location for students could either be the door of the residence or the curbside of the residence" and bus aides were "instructed" to leave the bus to assist the student in boarding.[6] Def.'s Opp'n, ECF No. 14, at 13 (citing *Ramirez*, 377 F. Supp. at 65-66) (emphasis added by Defendant). The *Ramirez* court affirmed the Hearing Officer's determination in favor of the parent after concluding that the "[student] needs a transportation aide to meet his education needs, rather than simply to provide convenience for his parents[.]" *Ramirez*, 377 F. Supp. 2d at 70.

In the instant case, Plaintiff acknowledges that "OSSE may provide services required of it in a manner that it considers appropriate, 34 C.F.R. § 300.361," but asserts that "it cannot choose a manner that fails to satisfy the various requirements of the Act and regulations issued pursuant thereto." Pl.'s Mot., ECF No. 12, at 11-12 (quoting *Ramirez*, 377 F. Supp. 2d at 68). The District contends that OSSE is "not rejecting the provision of transportation services to J.P.'s out-of-state school placement," Def.'s Opp'n, ECF No. 14, at 14, as it provides bus transportation between CARD Academy and the mother's residence in the District. *See* AR at 6-7. Rather, OSSE "will not change a route to accommodate a parent for their personal reasons." Def.'s Opp'n, ECF No.

---

[6] Defendant notes that "there is no evidence that J.P. has missed significant, or indeed any, stretches of schooling dues to this arrangement [where Mundo Verde reimburses the father for private transportation of J.P. to CARD Academy when J.P. stayed at the father's residence]." Def.'s Opp'n, ECF No. 14, at 15-16.

14, at 14.  The District contends that "even if J.P. attended Mundo Verde, or a different non-public special education day school *in* the District, OSSE would be obligated to provide transportation to and from J.P.'s District residence, not that residence *and* his father's out-of-state home."  *Id.*

Plaintiff contests the Hearing Officer's "focus on the burden that transporting the student to and from his father's home in Maryland would impose on OSSE," Pl.'s Mot., ECF No. 12, at 12 (referencing AR at 12-13). "Clearly, where necessary to some integral part of the student's educational needs, a district must provide related services even where this imposes a substantial burden on the district." *Gregory P.*, 687 A.2d at 40.  Defendant notes however that this quote from *Gregory P.* was made in reference to *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F. 2d 1153 (5th Cir. 1986), "which held that transportation required as a related service under the IDEA is not limited by the geographical boundaries of the school district and required the school district to provide transportation for a child with a disability to attend an out-of-district facility to receive special education services."  Def.'s Opp'n, ECF No. 14, at 15 (citing *Gregory P.*, 687 A.2d at 40).  But, in this case, the issue is not provision of transportation services to an out-of-boundary school as J.P. in fact is receiving transportation services.  *See* AR at 13 ("As long as Student resides in the District, OSSE is committed to providing him transportation services.")  At issue is the Hearing Officer's finding that OSSE is not obligated to alter those services to accommodate both of J.P.'s parents.

In its Reply, Mundo Verde describes this dispute as an "IEP implementation issue" insofar as "[a] state covered by the IDEA must provide a disabled child with such special education and related services in conformity with the child's individualized education program or IEP."  Pl.'s Reply, ECF No. 17, at 4 (quoting *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 390 (2017) (citation omitted)).  Plaintiff argues that a failure to implement claim relies on a demonstration that

13

the "agency has materially deviated from furnishing the services prescribed on the child's IEP," and no "showing of educational harm" is required. *Id.* (citations omitted). But Plaintiff has not shown a material deviation from J.P.'s IEP, as OSSE provided transportation services in accordance with its state-level policy, and furthermore, there is no indication that J.P. missed any educational services or that his parents bore any cost of the transportation.[7]

The District asserts that "Mundo Verde is seeking to shift costs it voluntarily undertook as the LEA to OSSE, the SEA, which is not appropriate under the IDEA."  Def.'s Reply, ECF No. 18, at 4; *see Bd. of Educ. of Oak Park & River Forest High Sch Dist. No. 200 v. Kelly E.*, 207 F.3d 931, 935-36 (7th Cir. 2000) (finding that nothing in Section 1415(i) would authorize an award of financial relief in favor of LEAs). The District asserts that it is "correct that District law allocated IDEA transportation funding to OSSE;" however, "neither the IDEA, District law, nor OSSE's transportation policy contemplate that an LEA may shift additional private transportation costs to the SEA for services not recognized to be appropriate by the SEA under its own policy regarding the delivery of transportation services." Def.'s Reply, ECF No. 18, at 4-5. The Court notes that Mundo Verde does not rely upon statutory or case law to support its cost shifting proposition, but rather upon "the Court's broad equitable discretion." Pl.'s Reply, ECF No. 16, at 5.

Accordingly, upon consideration of the parties' arguments, this Court finds that the Hearing Officer's reliance on *Gregory P.* and *Fick* was not misplaced, and furthermore, the

---

[7] Plaintiff contends that requiring the parents to provide the transportation prescribed in the IEP (at their own cost) "fifty percent of the time is also a violation of the IDEA's requirement that an appropriate education be provided at no cost to the parents." Pl.'s Reply, ECF No. 17, at 4 (referencing 20 U.S.C. § 1401 (9)).  But this contention that the parents had to provide transportation at their own cost during the 2022-2023 school year is not established in the administrative record or any supplemental evidence in this case, and as such, it is not properly before this Court.

Hearing Officer did not err in concluding that OSSE's transportation obligation under its transportation policy was limited to transportation to and from J.P.'s mother's residence in the District.  Plaintiff has not demonstrated "that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988), and therefore, the Hearing Officer's determination is affirmed.  A separate Order accompanies this Opinion.


DATED: September 28, 2023         _____/s/_____
                                  COLLEEN KOLLAR-KOTELLY
                                  UNITED STATES DISTRICT JUDGE